GEORGE W. NORRIS *vs.* PATRICK LYNCH.

Middlesex.   Jan. 10. — 29, 1877.   MORTON & ENDICOTT, JJ., absent.

An officer took the defendant's horses, and his wagon containing liquor, and directed the plaintiff, a stable keeper, to retain them until further orders. When the liquor had been removed, the plaintiff sent word to the defendant that he might have his horses and wagon, but the defendant refused, unless they were delivered to him. They remained at the plaintiff's stable, the horses were fed by him, and finally the defendant sent for them. *Held*, in an action to recover for feeding the horses after the liquor was removed, that no contract, express or implied, was shown between the parties.

Upon overruling frivolous exceptions, double costs are not imposed, under the Gen. Sts. *c.* 112, § 13, unless moved for.

CONTRACT to recover $3.00 for feeding a pair of horses belonging to the defendant, at noon and night of Monday, June 29, 1874, and in the morning and at noon of the next day. Trial in the Superior Court, on appeal, before *Colburn*, J., without a jury, who allowed a bill of exceptions, in substance as follows:

Between six and seven o'clock in the evening of Saturday, June 27, 1874, one Harris, a state constable, found the defendant's horses and wagon, in which were three barrels of ale, in charge of the defendant's driver, on a street in Lowell, near the defendant's place of business. The constable arrested the driver

and seized the ale and barrels, under the provisions of the St. of 1869, *c.* 415, § 57, and drove the wagon with the ale, about a quarter of a mile, to the plaintiff's stable, and directed the plaintiff to retain the horses, wagon and ale, until he gave him further orders. Harris was well acquainted with the defendant, knew his place of business, and that the horses and wagon belonged to him. He had also a place provided for the storage of seized liquors, within five minutes' drive of the place where this wagon was found by him, and plenty of room therein for the three barrels of ale, and there was nothing to prevent his taking this ale there immediately after the seizure, except his view of the law, which was, as he testified, that he must keep the ale in the wagon until he had obtained a warrant for its seizure.

At the time Harris took possession of the wagon, the clerk's office of the Police Court of Lowell was closed, and was not open again until about eight o'clock on Monday morning. Harris had no intention of making a complaint against the horses or wagon, but only against the ale and barrels; and on Monday morning, June 29, after the clerk's office was opened, did make such complaint, and obtained a warrant, with which he went to the plaintiff's stable, about 10 o'clock on that morning, and took the ale and barrels, and told the plaintiff that he might then let the defendant have his horses and wagon. Before Monday morning he made no effort to obtain a warrant. Soon after his wagon was driven to the plaintiff's stable, and once or twice more in the course of Saturday evening, the defendant went to the stable of the plaintiff, and demanded his horses and wagon, but the plaintiff refused to deliver them to him, until he had orders from Harris. On Monday morning, about 10 o'clock, but before the ale had been removed from the wagon, the defendant went again and demanded his horses and wagon of the plaintiff, and was again refused. After the ale had been removed, the plaintiff sent word to the defendant, which reached him in the afternoon of Monday, that he might have his horses and wagon, and the defendant sent back word that he should not go for them, but the plaintiff must deliver them to him at his place of business. The horses and wagon remained at the plaintiff's stable until the afternoon of Tuesday, June 30, the horses being properly fed by the plaintiff, when the defendant sent and took them away.

On the above facts, the judge ordered judgment for the defendant; and the plaintiff alleged exceptions.

*F. T. Greenhalge*, for the plaintiff.

*G. Stevens*, for the defendant.

BY THE COURT. There is nothing to show that there was any contract between the parties, express or implied. The plaintiff's claim and exceptions are frivolous; and double costs are not imposed, under the Gen. Sts. *c.* 112, § 13, merely because it is the settled practice of the court never to do so except upon motion.                              *Exceptions overruled.*